Kevin M. Lippman
Texas Bar No. 00784479
Lee J. Pannier
Texas Bar No. 24066705
MUNSCH HARDT KOPF & HARR, P.C.
3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile:  (214) 855-7584

**(PROPOSED) COUNSEL FOR THE UNSECURED
CREDITORS COMMITTEE IN GC LOGISTICS, INC.**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| GULF COAST TRANSPORT, INC., *et al.*, | § | Case No. 09-31896-SGJ -11 |
| | § | |
| Debtors.[1] | § | Jointly Administered |

### OBJECTION OF THE UNSECURED CREDITORS COMMITTEE IN GC LOGISTICS, INC. TO THE ENTRY OF A FINAL ORDER ON THE DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 363 AND/OR 364 FOR INTERIM AND FINAL ORDERS AUTHORIZING (I) DEBTOR-IN-POSSESSION FINANCING AND/OR (II) LIMITED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

TO THE HONORABLE STACY G.C. JERNIGAN, U. S. BANKRUPTCY JUDGE:

The Unsecured Creditors Committee in GC Logistics, Inc. (the "Committee") files its

objection ("Objection")[2] to the entry of a final order on the *Debtors' Emergency Motion Pursuant*

*to 11 U.S.C. §§ 363 and/or 364 for Interim and Final Orders Authorizing (i) Debtor-in-*

---

[1] The Debtors are Gulf Coast Transport, Inc., Case No. 09-31896; GC Leasing Services, Inc., Case No. 09-31897; Logistics, Inc., Case No. 09-31898; and Gulf Acquisitions, Inc., Case No. 09-31899.

[2] In support of the Motion and their other "first day" pleadings, the Debtors filed the *Declaration of Steven W. Wooten in Support of Debtors' First Day* [Docket No. 16] (as subsequently amended by the *First Amended Declaration of Steven W. Wooten in Support of Debtors' First Day Motions* [Docket No. 21]) (the "Declaration").

---

**OBJECTION OF THE UNSECURED CREDITORS COMMITTEE IN GC LOGISTICS, INC. TO THE ENTRY OF A FINAL ORDER ON THE DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 363 AND/OR 364 FOR INTERIM AND FINAL ORDERS AUTHORIZING (I) DEBTOR-IN-POSSESSION FINANCING AND/OR (II) LIMITED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION – PAGE 1**

*Possession Financing and/or (ii) Limited Use of Cash Collateral and Granting Adequate Protection* [Docket No. 9] (the "Motion"), and in support thereof would respectfully show the Court as follows: [3]

## I. BACKGROUND

### A.    Procedural Background

1.      On March 31, 2009 (the "Petition Date"), Gulf Coast Transport, Inc. ("Transport"), GC Leasing Services, Inc. ("Leasing"), GC Logistics, Inc. ("Logistics"), and Gulf Acquisitions, Inc. ("Acquisitions", and together with Transport, Leasing and Logistics, the "Debtors") filed their respective voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"), thereby commencing the above-referenced jointly administered bankruptcy cases (collectively, the "Bankruptcy Cases").  Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108.

2.      On April 1, 2009, the Debtors filed the Motion.  In the Motion, the Debtors state that Transport and Logistics entered into separate lending agreements (collectively, the "Lending Agreements") with Marquette Transportation Finance, Inc. ("Marquette") on October 27, 2008, whereby Transport and Logistics "assigned, sold, and/or factored certain accounts to Marquette." *See* Motion, at ¶¶ 7 & 10.[4]  Pursuant to the Lending Agreements, Transport and Logistics were able to borrow up to 90 percent of their respective "Qualified Receivables" (as this term is

---

[3] The Debtors agreed to extend the Committee's deadline for filing its objection to the Motion (as herein defined) to April 27, 2009.

[4] In the Motion, the Debtors characterize the Lending Arrangements as a "factoring arrangement." *See* Motion, ¶¶ 7 & 10.  Based on the Committee's understanding of the applicable loan documents, Marquette never acquired ownership of the accounts "factored" to Marquette.  Accordingly, it appears that Marquette is merely holding the accounts as security for repayment of the obligations owed to it by Transport and Logistics.

---

defined in the Lending Agreements) up to a maximum of $5 million for Transport and $1.5 million for Logistics.  In connection with the Lending Arrangements, the Debtors further state that on October 27, 2008: (i) Transport, Logistics and Marquette entered into that certain Cross Collateral Security/Cross Default Agreement; (ii) Transport entered into a guaranty agreement whereby it guaranteed the obligations owed to Marquette by Logistics; (iii) Logistics entered into a guaranty agreement whereby it guaranteed the obligations owed to Marquette by Transport; and (iv) Acquisition entered into two separate guaranty agreements whereby it guaranteed the obligations owed to Marquette by Transport and Logistics.[5]  The Debtors also state in the Motion that Marquette asserts "that it holds a security interest in, to, and against substantially all of the cash, accounts and accounts receivables" of each of the Debtors (the "Marquette Collateral"). *See* Motion, at ¶¶ 8, 11, 13 & 15.  Accordingly, by and through the Motion, the Debtors request the Court's authorization to obtain debtor-in-possession financing ("DIP Financing") and/or use the Marquette Collateral, as necessary, to continue to operate their businesses and for other uses as further outline in the Motion.

3.    On April 2, 2009, the Debtors and Marquette filed their *Stipulation and Agreement Regarding Debtors' Emergency Motion Pursuant to 11 U.S.C. §§ 363 and/or 364 for Interim and Final Orders Authorizing (i) Debtor-in-Possession Financing and/or (ii) Limited Use of Cash Collateral and Granting Adequate Protection* [Docket No. 20] (the "Stipulation") wherein Marquette agreed to allow the Debtors to use the Marquette Collateral post-petition and to provide DIP Financing to the Debtors under the terms and conditions set forth in the Lending Agreements and documents related thereto.

---

[5] In addition to the above guarantees, Marion Wooten, Steven Wooten, William Wooten, and Wooten Ventures, Ltd. each guaranteed the obligations owed to Marquette by Transport and Logistics.

4.     On April 3, 2009, the Court entered its *Interim Order Approving Stipulation and Agreement Regarding Post-Petition Financing and Use of Cash Collateral* [Docket No. 27] (the "Interim Order"), pursuant to which, among other things, the Court authorized the Debtors to obtain the DIP Financing and to use the Marquette Collateral as set forth in the Stipulation.

5.     On April 16, 2009 (the "Committee Formation Date"), the Office of the United States Trustee for the Northern District of Texas organized and appointed the Committee. The Committee is comprised of the following members: (i) Prima Express, Inc.; (ii) Southern Refrigerated Transportation; (iii) Invesco d/b/a Roll On Transportation Co.; and (iv) Daryl Thomason Trucking, Inc. The Committee elected Brandon Frederick, a representative of Southern Refrigerated Transportation, as its Chairperson.

6.     On the Committee Formation Date, the Committee selected, subject to the Court's approval, Munsch Hardt Kopf & Harr, P.C. as its counsel.

**B.     Logistics**

7.     Logistics is an ancillary business of Transport. Unlike Transport, Logistics does not own, lease or operate any trucks or trailers. Instead, Logistics "accepts freight loads from customers and uses *outside carrier partners* to satisfy customers' needs when [Transport] does not have available capacity." DECLARATION, ¶ 17 (emphasis added). In other words, Logistics: (i) receives shipping orders, which Transport is unable or unwilling to fulfill, for customers; (ii) contacts "outside carrier partners" to fulfill the customers shipping needs; and (iii) receives a set commission for acting as a broker between the customer and the "outside carrier partner." Accordingly, unlike Transport (and Leasing), Logistics has minimal overhead.

**OBJECTION OF THE UNSECURED CREDITORS COMMITTEE IN GC LOGISTICS, INC. TO THE ENTRY OF A FINAL ORDER ON THE DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 363 AND/OR 364 FOR INTERIM AND FINAL ORDERS AUTHORIZING (I) DEBTOR-IN-POSSESSION FINANCING AND/OR (II) LIMITED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION – PAGE 4**

8.      Upon information and belief, Logistics was a profitable business.  However, like Transport, Logistics entered into that certain MTF Advance Plus Revolving Credit and Security Agreement with Marquette on October 27, 2008 (the "Logistics Lending Agreement").  Pursuant to the Logistics Lending Agreement, Logistics would "factor" its accounts receivable to Marquette.  Those accounts evidenced the *full* amount of the customers' payment obligation to the "outside carrier partners," and were *not* limited to merely Logistics' commission.

9.      Under the terms of the Logistics Lending Agreement, the customers that Logistics connected to the "outside carrier partners" were instructed to send payment on their accounts/invoices directly to Marquette.  Once the invoice was billed by Logistics, Marquette would then lend Logistics 90 percent of the accounts receivable transferred to Marquette, up to a maximum advance of $1.5 million.  STIPULATION, ¶ f.

10.     The vast majority of the unsecured creditors in the Logistics' bankruptcy case are the "outside carrier partners" because Logistics failed to use the proceeds of the accounts it "factored" to pay those carriers.[6]  Upon information and belief, most of the proceeds of the "factored" accounts were deposited into an account maintained by Transport or Leasing and then subsequently were used to pay expenses incurred by Transport and Leasing.

11.     Marquette is the only known purported secured creditor of Logistics.  *See* STIPULATION at ¶f.

---

[6] The Committee understands that several of the "outside carrier partners" believe that the accounts receivable generated by Logistics in connection with its brokering transport service are held in trust by Logistics/Marquette to the extent of the amount which may be owed to those carriers.  For purposes of this Objection, the Committee does not take a position as to this belief.

---

## II.  OBJECTIONS AND RELIEF REQUESTED

12.     As of the filing of this Objection, the Committee has yet to see the proposed final order on the Motion.  Accordingly, the Committee makes this Objection based on the terms and provisions contained in the Stipulation and the Interim Order.  The Committee reserves it right to supplement/amend this Objection after it reviews the proposed final order.

### A.     The DIP Financing Is Not Necessary With Respect to Logistics

13.     The Committee's investigation into the business of Logistics is just beginning.  However, based on information learned to date, it appears that Logistics does not require DIP Financing.  Instead, it should be able to operate post-petition by using the cash collateral of Marquette.  Accordingly, the Committee objects to the entry of a final order subjecting the Logistics estate to an unnecessary DIP Financing and allowing the assets of Logistics to secure the DIP Financing to be provided to the other Debtors.

14.     With respect to Logistics, any final order on the Motion should merely authorize Logistics to use the cash collateral of Marquette, with appropriate protections being provided to Marquette with respect to such use under section 361 of the Bankruptcy Code.

### B.     The Debtors and Marquette Are Improperly Characterizing the Lending Agreements

15.     The Stipulation provides that the Lending Agreements "are incorporated herein and made a part hereof by this reference, are hereby ratified and approved, shall continue in full force and effect with respect to the Post-Petition Indebtedness, shall govern the Post-Petition Indebtedness and shall be deemed and held to be enforceable as against the Debtors."  STIPULATION, ¶ b.  In other words, the Debtors and Marquette are attempting to preserve their existing financing arrangements and to augment that relationship with further protections and

concessions for Marquette, such as first priority liens on all of the Debtors' post-petition accounts receivable. *See* STIPULATION, ¶ 5.

16.    The Stipulation, however, provides that the Debtors will sell their accounts to Marquette even though the Lending Agreements do not provide for the selling of accounts. *See* STIPULATION, ¶ 1(a).  Accordingly, it appears that the Debtors and Marquette are actually attempting to use the Motion to change the nature of the pre-petition financing Marquette provided to the Debtors.

17.    The Lending Agreements evidence a security agreement between the Debtors and Marquette and not a true sale.  The Logistics Lending Agreement between Marquette and Logistics is entitled "MTF Advance Plus Revolving Credit and Security Agreement."  Although a title may not be dispositive to the substance of an agreement, the content of the Logistics Lending Agreement also clearly indicates that the Logistics Lending Agreement is merely a security agreement by, among other things, allocating the risk of loss for any bad accounts to the Debtors and providing Marquette with recourse against the Debtors for such bad accounts.  *See Major's Furniture Mart v. Castle Credit Corp.*, 602 F.2d 538 (3rd Cir. 1979) (ruling that full recourse for bad accounts evidenced a disguised loan instead of a sale); *In re Carolina Util. Supply Co.*, 118 B.R. 412, 415-16 (Bankr. D. S.C. 1990) (holding that, after looking at "the practices, objectives, relationship and intention of the parties," the agreement at issue in the case was not a true factoring agreement but instead a security agreement because (i) "[t]he Bank [did] not bear any of the risk which could accompany a true purchase and transfer of ownership of the accounts;" (ii) "the Bank had full recourse against the debtor;" and (iii) the Bank charged the debtor interest at the then-prevailing rate).

18.     Because the Lending Agreements are merely security agreements, the Committee objects to the entry of a final order which implies that Marquette owns the accounts it received from Logistics.

**C.     The Committee's Professionals Must Be Included in the Professional Fee Carve Out**

19.     The Stipulation and the budget ("Budget"), dated April 13, 2009, only contemplate the inclusion of the fees/expenses incurred by the Debtors' professionals in the "Professional Fee Carve Out."  *See* STIPULATION, ¶ 4; Budget [Docket No. 63].

20.     Clearly, in order for the Committee to meaningfully participate in the Bankruptcy Cases, the professionals retained by the Committee must be included in the Professional Fee Carve Out.  This is particularly true because Marquette asserts that its collateral includes essentially all assets of Logistics.  Moreover, only including the Debtors' professionals in the Professional Fee Carve Out and not the professionals retained by the Committee is simply unjust and contrary to the practice in this District.

21.     According to the Debtors, Marquette is over-collateralized.  And, according to the Budget, the Debtors are projecting to have over $200,000 in "Estimated Free Cash Flow." Therefore, the Committee is unaware of any basis for excluding its professionals from the Professional Fee Carve Out.

22.     The Committee objects to the entry of a final order which does not provide for the inclusion of the Committee's professionals in the Professional Fee Carve Out.

**D.     Committee's Investigation Period With Respect to Marquette Should Be Extended**

23.     The Stipulation provides that the Debtors shall have 90 days from the date of an entry of a final order to assert an objection to the nature, extent, validity, or priority of

**OBJECTION OF THE UNSECURED CREDITORS COMMITTEE IN GC LOGISTICS, INC. TO THE ENTRY OF A FINAL ORDER ON THE DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 363 AND/OR 364 FOR INTERIM AND FINAL ORDERS AUTHORIZING (I) DEBTOR-IN-POSSESSION FINANCING AND/OR (II) LIMITED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION – PAGE 8**

Marquette's security interests or to any other matter with respect to Marquette. *See* STIPULATION, ¶ 1 (c). For all other parties, including the Committee, the deadline to assert such an objection is July 27, 2009. *See* INTERIM ORDER, ¶ 29.

24.    The Committee asserts that it should also be granted 90 days from the date of an entry of a final order on the Motion to assert an objection to the nature, extent, validity, or priority of Marquette's security interests or to any other matter with respect to Marquette. There is no basis for the Debtors and the Committee having two separate objection deadlines.

**E.    The Final Order Should Grant the Committee Standing to Pursue Chapter 5 Causes of Action**

25.    Although "in the normal course," a debtor or trustee would pursue avoidance actions under Chapter 5 of the Bankruptcy Code, a court may grant a creditors' committee standing to pursue the debtor's and trustee's claims or actions if the court finds "that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is necessary and beneficial." *In re Commodore Int'l Ltd.*, 262 F.3d 96, 99-100 (3rd Cir. 2001) (internal quotations omitted). *See also Official Comm. of Unsecured Creditors of Cybergenics v. Chinery*, 330 F.3d 548, 566 (3rd Cir. 2003) (ruling that the Bankruptcy Code recognizes and approves derivative standing for creditors' committees, thereby allowing creditors' committees "to play a robust and flexible role in representing the bankruptcy estate, even in adversarial proceedings" such as avoidance actions). Given what transpired prepetition with respect to the operations of the Debtors, it is entirely appropriate for the Court in the final order on the Motion to grant the Committee standing to pursue Chapter 5 claims arising from the Lending Agreements.

26.    It appears that Logistics did not receive reasonably equivalent value in exchange for the obligations it incurred in connection with the Lending Agreements. Clearly, Logistics did

not receive value anywhere close to the liabilities it incurred as a result of the Lending Agreements and related documents.  Moreover, upon information and belief, the advances made by Marquette under the Logistics Lending Agreement were either deposited into an account in the name of Transport or were otherwise used to pay the expenses of Transport and Leasing. Under either event, Logistics did not receive the benefit of the accounts its business generated, and its creditors are now owed in excess of $700,000.

27.     Additionally, during the one year period prior to the commencement of the Bankruptcy Cases, approximately $1.3 million was distributed to insiders of the Debtors, including $160,000 to repay Riley Wooten (the father of Steve Wooten, President of the Debtors) for his "Capital Infusion."  *See* Transport's Statement of Financial Affairs, pp. 8-9.  To the extent that Logistics' funds were co-mingled with funds belonging to Transport and Leasing, it is likely that Logistics' funds were used to fund the disbursements made to these insiders.

28.     The Committee will be asking the Court for authority to conduct Rule 2004 exams with respect to the Lending Arrangements in order to determine whether the Logistics estate received any benefit from the financing arrangement with Marquette and to determine how the proceeds from the advances made by Marquette were used.  If this investigation produces sufficient facts to support claims under Chapter 5 of the Bankruptcy Code, the Committee should have the authority to bring such claims and not be required to incur additional expenses seeking leave to pursue the claims.  This is particularly true given that the Committee is the only estate fiduciary working for the best interest of the Logistics estate.

29.     Therefore, the Committee requests that the final order on the Motion grant it standing to pursue Chapter 5 claims arising from the Lending Agreements.

---

**OBJECTION OF THE UNSECURED CREDITORS COMMITTEE IN GC LOGISTICS, INC. TO THE ENTRY OF A FINAL ORDER ON THE DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 363 AND/OR 364 FOR INTERIM AND FINAL ORDERS AUTHORIZING (I) DEBTOR-IN-POSSESSION FINANCING AND/OR (II) LIMITED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION – PAGE 10**

**F.     Committee Should Receive All Required Reports and Notices**

30.     The Stipulation imposes certain reporting requirements on the Debtors and noticing requirements on Marquette.  *See* STIPULATION, ¶¶ 15, 16, 18, 21, & 22.  Any final order on the Motion should include counsel for the Committee as a party entitled to receive copies of any documents the Debtors and Marquette are required to provide each other, including any event of default notices.

WHEREFORE, the Committee respectfully requests that this Court: (i) not enter a final order on the Motion under the terms set forth therein and in the Stipulation; (ii) require any final order on the Motion to provide the Committee the protections and changes requested herein, including standing to pursue avoidance actions under Chapter 5 of the Bankruptcy Code; and (iii) grant the Committee such other and further relief to which it is justly entitled.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

Respectfully submitted this 27th day of April, 2009.

**MUNSCH HARDT KOPF & HARR, P.C.**

500 North Akard Street
3800 Lincoln Plaza
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile:  (214) 978-4335
E-mail:  klippman@munsch.com
E-mail:  lpannier@munsch.com

By:    /s/ Kevin M. Lippman
　　　Kevin M. Lippman
　　　Texas Bar No. 00784479
　　　Lee J. Pannier
　　　Texas Bar No. 24066705

**(PROPOSED) COUNSEL FOR THE
UNSECURED CREDITORS COMMITTEE IN
GC LOGISTICS, INC.**

**CERTIFICATE OF SERVICE**

　　　This is to certify that the undersigned caused a true and correct copy of the foregoing Objection to be served via e-mail on the parties listed below, via electronic mail by the Court's ECF System, and upon the parties listed on the attached service list by First Class United States mail, postage prepaid, on the 27th day of April, 2009.

Stephanie Curtis
scurtis@curtislaw.net

Thomas Lallier
tlallier@foleymansfield.com

J. Michael Sutherland
msutherland@ccsb.com

Nancy Resnick
Nancy.s.resnick@usdoj.gov

　　　　　　　　 /s/ Kevin M. Lippman
　　　　　　　　Kevin M. Lippman

**OBJECTION OF THE UNSECURED CREDITORS COMMITTEE IN GC LOGISTICS, INC. TO THE
ENTRY OF A FINAL ORDER ON THE DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C.
§§ 363 AND/OR 364 FOR INTERIM AND FINAL ORDERS AUTHORIZING (I) DEBTOR-IN-
POSSESSION FINANCING AND/OR (II) LIMITED USE OF CASH COLLATERAL AND GRANTING
ADEQUATE PROTECTION – PAGE 12**
MHDocs 2083093_2 10957.1