Kevin M. Lippman
Texas Bar No. 00784479
Davor Rukavina
Texas Bar No. 24066705
MUNSCH HARDT KOPF & HARR, P.C.
3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile:  (214) 855-7584

COUNSEL FOR THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF GC LOGISTICS, INC.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| GULF COAST TRANSPORT, INC., *et al.*, | § | Case No. 09-31896-SGJ -11 |
| | § | |
| Debtors. | § | Jointly Administered |

**EXPEDITED MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GC LOGISTICS, INC. FOR EXAMINATION OF MARQUETTE TRANSPORTATION FINANCE, INC. UNDER BANKRUPTCY RULE 2004**

TO THE HONORABLE STACEY G.C. JERNIGAN, U.S. BANKRUPTCY JUDGE:

COMES NOW the Official Committee of Unsecured Creditors in GC Logistics, Inc. (the "Committee"), an official committee appointed in the above styled and numbered jointly administered bankruptcy case (the "Bankruptcy Case"), and files this its *Expedited Motion of the Official Committee of Unsecured Creditors of GC Logistics, Inc. for Examination of Marquette Transportation Finance, Inc. Under Bankruptcy Rule 2004* (the "Motion"), respectfully stating as follows:

### I.  BACKGROUND

1. On March 31, 2009 (the "Petition Date"), Gulf Coast Transport, Inc., GC Leasing Services, Inc., GC Logistics, Inc. ("Logistics"), and Gulf Acquisitions, Inc. (collectively, the

"Debtors") filed their respective voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"), thereby initiating the Bankruptcy Case and creating their separate bankruptcy estates.

2. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On April 16, 2009, the Office of the United States Trustee for the Northern District of Texas organized and appointed the Committee. The Committee has been appointed to represent the collective interests of the unsecured creditors of only the Logistics estate, and not the other Debtors' estates.

4. The Court has jurisdiction over the Bankruptcy Case and this Motion pursuant to 28 U.S.C. § 157 and 1334. This Motion constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. RELIEF REQUESTED

5. By this Motion, the Committee requests an examination (the "Examination") of Marquette Transportation Finance, Inc. ("Marquette") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Specifically, the Committee requests that the Court order Marquette to produce the documents identified on the Requests for Production attached hereto as Exhibit "A" and incorporated herein (the "Requests") by no later than fifteen (15) days after the entry of such order (assuming that the Court grants the Committee's requested expedited consideration of this Motion), or such other time as the Committee may agree to.[1]

---

[1] The Committee has sought Marquette's input into the scope of the Requests, and has attempted to accommodate Marquette's requests in this respect. As of the filing of this Motion, no agreement regarding the same has been reached.

6. The Examination is necessary to enable the Committee to: (i) investigate whether the Logistics estate has any causes of action against Marquette, and the potential value thereof; (ii) investigate whether the Logistics estate has any causes of action against the other Debtors and their insiders, and the potential value thereof; (iii) meaningfully participate in the Bankruptcy Case, including with respect to any potential plan that may be filed by the Debtors; (iv) negotiate from an informed perspective with the key constituents in the Bankruptcy Case; and (v) otherwise fulfill its role in a meaningful manner in the Bankruptcy Case.

### III. DISCUSSION

#### A. NEED FOR DISCOVERY

7. The Committee is statutorily charged to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, [and] the operation of the debtor's business." 11 U.S.C. § 1103(c)(2) (2007). Although the Committee has requested voluntary and informal discovery from Marquette, no agreement has been reached as of the filing of this Motion, and the Committee believes that a coercive order from this Court governing such discovery is appropriate in light of various deadlines and proceedings in the Bankruptcy Case.

8. Prior to the Petition Date, debtors Gulf Coast Transport, Inc. ("Transport") and Logistics entered into alleged factoring agreements with Marquette, pursuant to which these entities generally factored their accounts receivable to Marquette in exchange for 90% of the value of the factored and accepted receivables, which Marquette apparently structured as a loan to the Debtors as opposed to an outright sale of the receivables. The account debtors were instructed to send payment on the accounts receivables either directly to Marquette, or to a lock box maintained for the benefit of Marquette.

9. Marquette allegedly perfected various security interests in and to the property of the Debtors, including Logistics, consisting primarily of the accounts receivables thereof. Moreover, Logistics allegedly executed cross-default and cross-collateral agreements, thereby granting Marquette security interests in its property to secure the separate obligations of Transport to Marquette.

10. On May 1, 2009, this Court entered its *Final Order: (i) Approving Stipulation and Agreement Regarding Debtors' Emergency Motion for Post-Petition Financing and Use of Cash Collateral; (ii) Granting Liens and Security Interests Pursuant to 11 U.S.C. § 364(c); and (iii) Authorizing Use of Cash Collateral* [docket no. 125] (the "Final CC Order"). Among other things, in approving the stipulation the subject of the Final CC Order this Court found that Marquette's claims and alleged liens in and to the property of the Debtors, including Logistics, were valid, perfect, and not avoidable.

11. Additionally, the Final CC Order establishes a deadline of August 7, 2009 for any party-in-interest in the Bankruptcy Case, including the Committee, to assert a challenge to the validity, extent, perfection, and priority of any of Marquette's prepetition liens and claims, or to assert affirmative causes of action against Marquette. If no such action is commenced by this deadline, Marquette will effectively be released from any potential estate claims and causes of action, and its alleged claims and liens will be allowed on a final basis.

12. Separate from Marquette, the Committee has serious concerns regarding the use of the proceeds from Marquette of the accounts receivables factored by Logistics to Marquette. The Debtors' principal, Mr. Wooten, admitted at the meeting of creditors that the proceeds of the Logistics' receivables were used to fund the operations of the other Debtors. Yet the Debtors have failed to schedule any inter-company loans or obligations. Moreover, as the Committee

understands it, Logistics had minimal employees and operating expenses, yet factored valuable receivables to Marquette. Logistics should not have become insolvent, and it should not have accrued large obligations to prepetition creditors if the proceeds of its receivables were being used to fund solely its operations and obligations.

13. Accordingly, the Committee has a need for formal discovery from Marquette to investigate, understand, and potentially bring a claim or cause of action regarding, the following matters, among others:

- to investigate the alleged validity, perfection, extent, and priority of Marquette's claims and liens;

- to investigate whether potential avoidance and other causes of action exist against Marquette;

- to investigate whether Logistics' cross-default and cross-collateralization of the other Debtors' obligations to Marquette is valid and whether it is potentially subject to avoidance;

- to understand the flow of receivables proceeds from Marquette to Logistics and the other Debtors and to investigate whether the Logistics estate has valuable claims and causes of action against the other Debtors on account of the use of its proceeds by the other Debtors; and

- to understand prepetition transactions and finances, and therefore potential postpetition rights and actions, as the Committee engages in various negotiations with Marquette and the Debtors and as the Debtors move towards any plan they may file.

14. The need for this discovery is magnified by two other considerations. First, the Final CC Order imposes upon the Committee a relatively short deadline to commence any challenge or action against Marquette. Second, the Debtors are under common ownership and management, and the Committee questions whether the Logistics estate, under its management, can objectively and properly analyze, investigate, and prosecute potential rights that this estate has against the other Debtors and their estates.

B. **NEED FOR RULE 2004 DISCOVERY**

15. While the Committee has a present and urgent need for the discovery the subject of the Examination, no "contested matter" currently exists between the Committee and Marquette such as to trigger automatic discovery under Rule 9014(c) of the Federal Rules of Bankruptcy Procedure. Although the Committee reserves its right to object to any proposed plan and any other motion or application filed in the Bankruptcy Case, the Committee does not believe it appropriate to do so solely for the purpose of obtaining access to automatic discovery. Thus, the Committee requires Rule 2004 to obtain the discovery that it needs. As explained below, this type of discovery is at the core of the existence and purpose of Rule 2004.

C. **APPLICABILITY AND SCOPE OF RULE 2004**

16. Rule 2004 provides that, "[o]n motion of any party in interest, the court may order the examination of <u>any</u> entity." FED. R. BANKR. P. 2004(a) (emphasis added). *See also In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) (the "examination is not limited to the debtor or his agents, but may properly extend to creditors and third parties who have had dealings with the debtor"); *In re GHR Energy Corp.*, 35 B.R. 534, 537 (Bankr. D. Mass. 1983); *In re Maidman*, 2 B.R. 18, 18-19 (Bankr. S.D. Fla. 1979).

17. The scope of the Rule 2004 examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P. 2004(b). "The purpose of a Rule 2004 examination is to determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors." *In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000).

18. The scope of a Rule 2004 examination is "extremely broad," and has even been likened by some courts to a "lawful 'fishing expedition.'" *Id*. (*quoting Bank One, Columbus, N.A. v. Hammond (In re Hammond)*, 140 B.R. 197, 201 (S.D. Ohio 1992)). "The scope of a [ ] Rule 2004 examination is 'unfettered and broad.' Its purpose is to facilitate the discovery of assets and the unearthing of frauds and has been likened to a quick 'fishing expedition' into general matters and issues regarding the administration of the bankruptcy case." *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (quoting *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983). The standard for granting a Rule 2004 examination is whether the movant has established "good cause." *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992).

19. Here, the Committee has demonstrated good cause for requesting relief under Rule 2004. Among other things:

- the Examination is necessary to enable the Committee to fulfill its statutory duties and to adequately represent the interests of its constituents;

- the Examination is necessary to evaluate and test the alleged validity, extent, perfection, and non-avoidance of the alleged liens and claims of Marquette;

- the Examination is necessary to enable the Committee to understand the Debtors' prepetition finances and transactions and any inter-company claims that may exist; and

- the Examination is necessary to enable the Committee to make informed decisions regarding potentially valuable rights, claims, and causes of action of the Logistics estate.

20. Moreover, the relief requested by the Committee is at the core of Rule 2004. That relief would not unduly prejudice Marquette because the Committee believes that Marquette has the documents the subject of the Requests readily available. Rather, that relief would benefit Marquette and all parties in the Bankruptcy Case by enabling the Bankruptcy Case to meaningfully proceed towards its logical conclusion.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Committee respectfully requests that the Court enter an order: (i) granting this Motion; (ii) ordering Marquette to produce the documents the subject of the Requests no later than fifteen (15) days after the entry of such order, subject to Marquette's privileges as otherwise applicable; and (iii) granting the Committee such other and further relief to which it may show itself to be justly entitled.

RESPECTFULLY SUBMITTED on this the 26th day of June, 2009.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Kevin M. Lippman
    Texas Bar No. 00784479
    Davor Rukavina
    Texas Bar No. 24066705
    3800 Lincoln Plaza
    500 N. Akard Street
    Dallas, Texas 75201
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584

**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GC LOGISTICS, INC.**

## CERTIFICATE OF CONFERENCE

  The undersigned hereby certifies that, prior to filing this Motion, he discussed the relief requested herein on several occasions with Thomas J. Lallier, Esq., counsel of record for Marquette.

             By: /s/ Davor Rukavina
               Davor Rukavina, Esq.

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that, on this the 26th day of June, 2009, he caused a true and correct copy of this Motion, with the exhibit thereto, to be served, by e-mail on the parties listed below, and additionally, on the same date, by U.S. first class mail, postage prepaid, on the parties listed on the service list attached hereto.

  Mark Castillo, Esq.      Thomas Lallier, Esq.
  E-mail: mcastillo@curtislaw.net   E-mail: tlallier@foleymansfield.com

  J. Michael Sutherland, Esq.
  E-mail: msutherland@CCSB.com

             By: /s/ Davor Rukavina
               Davor Rukavina, Esq.